## WILLIAM P. KESSLER et al., Appellants, v. EDWIN OLIVER KUHNLE et al., Respondents.

**St. Louis Court of Appeals. Submitted on Briefs June 6, 1911. Opinion Filed June 30, 1911.**

1. **BILLS AND NOTES: Negotiability: Effect of Release of Makers.** Where, in conformity to a decree rendered in a suit to have a resulting trust declared in land, certain notes secured by a deed of trust on the land were indorsed by the payee without recourse and also with a release of the makers, who were defendants in the suit, such notes thereby lost their quality as negotiable paper, so that, on a subsequent transfer thereof, the transferee was only entitled to a lien on the land to the extent of the amount due thereon.

2. **MORTGAGES AND DEEDS OF TRUST: Foreclosure: Disposition of Surplus: Facts Stated.** Complainants purchased certain land, giving, as part consideration for the price, principal and interest notes, secured by a deed of trust on the land. Thereafter a club, claiming that complainants had purchased the land for it, sued to enforce its rights, and obtained a decree, on condition, among other things, that it take up the notes and relieve complainants from liability thereon. The notes were taken up by the club, indorsed without recourse by the payees, together with a release of complainants' liability as makers, after which they were purchased by defendant Karby. Complainants appealed from this decree and filed a proper supersedeas bond. On default in the payment of an interest note, the trustee advertised the land for sale, and complainants sued to restrain such foreclosure. Karby, in his answer, by way of cross action, prayed that the equity of redemption of

complainants in the land in question be foreclosed and that the same be sold to discharge the judgment prayed for. *Held*, that Karby was the owner of the notes, not as the holder of commercial paper, but as the owner by purchase of a lien upon the land, evidenced as to amount by the notes, and as such he was entitled to satisfaction of his claim out of the property, and that his title to the lien (he being a purchaser for value) was not dependent on the result of the appeal in the first case. *Held, further*, that he took the notes and acquired the lien under such circumstances as entitled complainants to any surplus that may be realized on the sale, over and above the amount of the lien, provided the first case, in which an appeal was taken, should be ultimately decided in their favor. *Held, further*, merical paper, but as the owner of purchase of a lien upon *further*, that it was the duty of the court, on permitting Karby to foreclose the deed, first, to determine the amount of the debt which constitutes a lien against the property, and then to provide that any surplus remaining after paying the debt and costs should be paid into court to await the outcome of complainants' appeal, to determine whether such surplus belongs in equity to complainants or to the club.

3. **JUDGMENTS: Conclusiveness: Third Party.** A person who acquires a lien on land is not bound by a decree affecting such land, rendered in an action in which he was not a party, although he may have had knowledge of it.

Appeal from Lincoln Circuit Court.—*Hon. James D. Barnett*, Judge.

REVERSED AND REMANDED (*with directions*).

*John B. Dempsey* and *R., L. Sutton* for appellants.

(1.) The mortgagor cannot be put in default for non-payment of interest on the mortgage debt while the holder of the mortgage debt is engaged in the prosecution of a suit seeking to obtain a decree for the absolute title to the mortgaged premises and to relieve the mortgagor from the payment of the mortgage debt. Such conduct amounts to a waiver of default pending the litigation. Gerig v. Loveland, 130 Cal. 512; McArthur v. Magee, 114 Cal. 126; Goff v. Hedgecock, 144 Ind. 415; Learned v. Walton, 42 La. Ann. 455; Williams v. Townsend, 1 Bosw. 411;

Schweitzer v. Stoeckel, 4 Phila. 281; Lawrence v. Ward, 28 Utah, 129; Ladd v. Ruggles, 23 Cal. 232; Doty v. Whittlesey, 1 Root (Conn.) 310; Lynch v. Cunningham, 6 Abb. Pr. (N. Y.) 94; Mortgage Co. v. Ralston, 38 La. Ann. 593; Asendorf v. Meyer, 8 Daly (N. Y.) 278; McCotter v. DeGroot, 19 N. J. Eq. 72. (2) A decree for the foreclosure of a mortgage or a deed of trust must find and adjudge the exact amount due the complainant. Without this the judgment is erroneous if not void. Hibernia Sav. Soc. v. Behnke, 121 Cal. 339; Sliney v. Davis, 11 Colo. App. 480; Trust Co. v. Ice Co., 14 App. Cas. 304; Vermont L. & T. Co. v. McGregor, 5 Ida. 510; Thompkins v. Wiltberger, 56 Ill. 385; Aldrich v. Sharp, 4 Ill. 261; Travelers' Ins. Co. v. Patten, 98 Ind. 209; Wernwag v. Brown, 3 Blackf. 457; Sewing Mach. Co. v. Rutledge, 60 Iowa 39; Hopkins v. Ward, 12 B. Mon. 185; New Orleans v. Pigniolo, 29 La. Ann. 835; Baker v. Byerly, 40 Minn. 489; Rumsey v. Railroad, 144 Mo. 175; Core v. Davis, 124 N. C. 234; Citizen's Sav. Assoc. v. Heiser, 150 Pa. St. 514; Pante v. Bethel, 9 Heisk. 666; Smith v. Flint, 6 Gratt. 40; Rohrer v. Travers, 11 W. Va. 146; Livesay v. Jarrett, 3 W. Va. 283; Wylie v. Karner, 54 Wis. 591; Rice v. Cribb, 12 Wis. 179.

*R. H. Norton*, for respondents, filed argument.

REYNOLDS, P. J.—About the eighteenth of October, 1907, plaintiff and his wife, appellants here, took a warranty deed for several tracts of land in Lincoln county, from Fred Naxera and Edward H. Knight and their wives, the deed dated August 15th, 1907, and recorded October 25th of that year. As part consideration for the purchase of this land plaintiff and his wife executed their principal note for six thousand dollars, payable ten years after date to the order of Naxera and Knight, with interest from maturity at the rate of eight per sent per annum, and

also twenty semi-annual interest notes, each for $180, maturing at periods of six months. To secure these notes plaintiff and his wife executed a deed of trust to one Kuhnle, as trustee. At the time of this purchase appellant Kessler was a member, director and president of a hunting club called The Prairie Slough Fishing & Hunting Club, hereafter referred to as the Club. Afterwards, on February 9, 1909, the Club, claiming that plaintiff was then acting for the Club, instituted suit against defendants in the circuit court of Lincoln county, charging that plaintiff in so taking title to the property in his name and in the name of his wife, had perpetrated a fraud on the Club, and a decree was asked requiring plaintiffs to convey the property to the Club, or that appellants, defendants in that suit, be declared to hold the same for it. That cause being at issue and heard, resulted in a decree in favor of the Prairie Slough Fishing & Hunting Club and against these plaintiffs, finding that plaintiff Kessler, in acquiring title to the property for himself and wife, was not acting in good faith but in fraud of the Club and its members and that in equity and good conscience it should be decreed that plaintiff and his wife held the property in trust for the Club; that the title be divested from Kessler and wife and vested in the Club; that all unpaid rents accruing during the the year 1909 and subsequent should belong to the Club and that on or before the 18th of October, 1909, the Club "reimburse said William P. Kessler and repay to him the sum of five hundred dollars paid by said Kessler on the purchase price of said lands and repay him the sum of two hundred, seventy-six and sixty-five hundredths dollars, the amount expended by him in improvements on said lands and also repay to him the sum of three hundred, sixty dollars paid by said Kessler on said interest notes, less however,, the sum of fifty-six dollars received by said Kessler as rent on said property, under the terms of said lease," (the

land being under a ten year lease to the Club from the former owners). It was adjudged that the Club take up the $6000 note and the unpaid interest notes so as to release Kessler and his wife from all liability thereon, "and that on compliance with said order by said plaintiff (the Club), that the title to said lands vest in plaintiff as heretofore decreed by the court." Costs were adjudged against Kessler and wife and it was ordered that the Club, plaintiff in that suit, make report as to its compliance with the order at the next term of court. At that term the Club reported in court, that in obedience to the order of the court contained in the decree it "has taken up from Naxera and Knight the six-thousand-dollar deed of trust and all interest notes secured by said deed of trust that are unpaid, seventeen in number, for one hundred eighty dollars each, and has endorsed on each of said notes, including the principal note of six thousand dollars, a full release of the defendants, William P. Kessler and Lena Kessler, of all personal obligation on each and all of said notes. That said principal note of six thousand dollars and seventeen interest notes of one hundred eighty dollars each constitute all of the unpaid indebtedness mentioned and described in said deed of trust executed by said William P. Kessler and Lena Kessler to Knight and Naxera." The Club, through its attorney, further reported that it had deposited in court for the use and benefit of Knight the sum of $1080.65, the amount ordered by the decree to be paid to Kessler by the Club. The notes were exhibited in court and are also in evidence in this case, and each of them bears these indorsements:

"Without recourse." (Signed). "E. H. Knight."

"Without recourse on me." (Signed). "Fred Naxera."

"Pay to the order of any bank or banker for collection." (Signed). "Mercantile Bank of Louisana, Missouri. E. B. Rule, Cashier."

"In accordance with the judgment and order of the circuit court of Lincoln county, Mo., the makers of this note Wm. P. Kessler and Lena Kessler are hereby released from all personal liability on this note." (Signed). "Prairie Slough Fishing & Hunting Club." (Signed). "A. P. Bohlinger, President. Jacob Gerst, Secretary."

It was admitted that these indorsements on the notes were in this form at the time of the filing of the report in the case in which the Prairie Slough Fishing & Hunting Club was plaintiff and William P. and Lena Kessler were defendants, being the suit before referred to. In due time appellants here, Kessler and wife, appealed from that decree to the Supreme Court of this state, where that cause is now pending on their appeal, they executing an appeal bond in usual form in the sum of fifteen hundred dollars, which was duly approved. Afterwards, that is after the appeal had been taken in the case of the Club against the Kesslers, Kuhnle, the trustee named in the deed of trust above referred to, advertised the property described in it for sale under the terms of the deed of trust, the sale to be held on the 26th of February, 1910.

Whereupon these present plaintiffs, appellants here, instituted this suit to enjoin the sale by the trustee, it being charged in the petition in this cause that the Prairie Slough Fishing & Hunting Club, "or the officers thereof who held said notes for it, have, for the purpose of rendering ineffective any judgment which may finally be rendered in said cause and for the purpose of changing the status of the property embraced in this cause and of jeopardizing the rights and interests therein of these plaintiffs, wrongfully transferred and delivered the said notes to some person or persons who have taken the same with full knowledge of all the facts and circumstances attending said notes and deed of trust, and are now, as al-

leged legal holders and owners thereof, through the above named defendant Edwin Oliver Kuhnle, as trustee, and for the purpose of assisting said Club in such wrongful sale, about to foreclose said deed of trust, by exercising the power of sale contained therein." Averring that unless defendants in the cause are prohibited and restrained from making the sale plaintiffs will sustain irreparable injury, and are without adequate relief save in a court of equity, and stating that they are unable to ascertain to whom the notes have been transferred and delivered and cannot therefore state his or their name or names, but "that by reason of being the owner or owners of said notes and of said deed of trust (he or they) has or have an interest in said real estate and is or are interested in the subject-matter of this petition and of this suit," plaintiffs pray for a judgment enjoining and restraining the Club, Edwin O. Kuhnle, the trustee, and these unknown owners of the notes from selling the property under the deed of trust during the pendency of plaintiff's appeal to the Supreme Court, and for general relief.

On the filing and presentation of this petition, the circuit court issued a temporary injunction. Afterwards one Otto F. Karbe appeared and claiming to be the owner of the notes referred to, entered his appearance as a defendant and was substituted as such for the unknown and unnamed defendants. The Club also entered its appearance and answered, admitting the statements in the petition as to the suit referred to but denying that the notes were transferred for the purpose alleged or that there was any fraud connected with their transfer and averring that the defendant Club took title subject to these notes, and that they are a subsisting lien on the land and that they took the land subject to this incumbrance and averring that Kessler and his wife were relieved by the decree of

the court from all personal liability on or under the notes but deny all other averments in the petition.

Karbe by his answer, denies all averments in the petition except as thereinafter specifically admitted. He admits all the averments concerning the suit of the Club against the Kesslers and that the notes were brought into court in that suit and admits that the indorsements released the Kesslers from personal liability on the notes, and avers that after the appeal of the Kesslers from the judgment rendered the notes were transferred and delivered "to some person or persons as therein alleged." He avers that he, Karbe, was such person referred to, to, whom the notes had been transferred and delivered, and that he is now the legal holder of the same. He denies that they were transferred to him for the purpose of rendering inefficient any judgment that might be rendered in the case referred to or that the notes were wrongfully transferred as averred by the plaintiffs in their petition, but avers that the notes were purchased by him in good faith and for a valuable consideration without any fraud or wrongdoing on his part. Wherefore he prays that the temporary injunction be dissolved and the bill dismissed.

By way of further answer and cross action, and as looking toward equitable relief for himself, defendant Karbe alleges the execution of the notes by Kessler and wife, their delivery to the payee, the execution of the deed of trust to Kuhnle, as trustee, securing them upon the land described, the delivery and record of the deed of trust, and that by the terms and provisions of that deed, if any of the notes secured by it were not paid in ten days after maturity thereof, then that all of them should become due and payable, including the principal and the interest notes. Averring that only the first three interest notes have been paid but that the fourth, which fell due on the 18th of October, 1909, was not paid at maturity thereof

nor within ten days thereafter, and that that note is now due and unpaid, and that by the terms of the deed of trust all of the interest notes, as well as the principal, are now due under the terms of the deed of trust and that they were duly endorsed before maturity by Naxera and Knight "and in due course of business, were transferred to this defendant, Otto F. Karbe, and that he, said Otto F. Karbe, is now the owner and holder of said notes," he prays for judgment for the amount of the principal note and all interest notes with interest on all of the notes from the 18th of October, 1909, "and that the equity of redemption of the said William P. and Lena Kessler in and to the lands hereinbefore described be foreclosed and that the same, or so much thereof as may be necessary to be sold to pay off and discharge the judgment prayed for and for all other and proper relief."

The trustee appears not only to have been duly served but to have entered his voluntary appearance in the cause but does not appear to have interposed any pleading.

The court having heard the cause, entered a judgment dismissing the petition of plaintiffs and rendering judgment of foreclosure on the cross action of defendant Karbe, the court ordering as to that, "that the equity of redemption of plaintiffs William P. Kessler and Lena Kessler in the following described lands, to-wit (describing them) be foreclosed and that said premises be sold free and clear of any and all claims, interest or estate of said plaintiffs or any one claiming under them to satisfy said mortgage and that special *fieri facias* be directed to the sheriff of Lincoln county, Missouri." Plaintiffs duly interposed their motion for a new trial. That being overruled and exceptions duly saved they have brought the case here on appeal.

At the trial of the cause plaintiffs introduced the notes with the indorsements above referred to, as well

as the pleadings and decree in the suit of the Prairie Slough Fishing & Hunting Club against the Kesslers, with the orders made in that cause, including the appeal to the Supreme Court. It was admitted that the defendant Karbe was about to foreclose under the deed of trust by a sale to be had on the 26th of February, 1910, and that he had published notice of the sale in the county paper. Defendant Karbe was examined as a witness on the part of plaintiff, and testified to the purchase of the notes by himself, he paying $6000 for them, which was a discount of about $212 of the amount due on the interest notes. Defendants also introduced all the entries and orders in the first suit. They then introduced as a witness Mr. Bohlinger, who testified that he was president of the Prairie Slough Fishing & Hunting Club and had been so since September 15, 1908, and was such at the time of the proceedings in court against the Kesslers when the decree was rendered in that suit; that in order to comply with the decree of the court, as the Club was not in position to buy the deed of trust, he himself and three other gentlemen put up their own money and bought, that is bought the notes from the payees Naxera and Knight, and that after the decree of the court had been rendered in that cause he and his associates sold them to defendant Karbe through the negotiations of an agent; that he did not buy them for the Club and did not buy them with the Club's money but that they were bought with the individual money of himself and three other gentlemen.

Mr. Karbe was recalled on cross-examination by plaintiff and produced his bank book and check book in corroboration of his purchase of the notes referred to.

We have read all the testimony in this case as set out in the abstract, and have concluded that the judgment of the learned trial judge, while sustained by the evidence in the case in so far as concerns the

ownership in the lien on the land as being in the defendant Karbe, will have to be reversed for two reasons:

First, in entering a judgment of foreclosure of a mortgage or deed of trust and ordering a sale, it is for the court to find and determine the amount of the debt which constitutes a lien against the property to be sold.

In the second place, we think the learned trial court was in error in not providing for the contingency, which might happen, of the property, on a sale under foreclosure, realizing more than the amount of the lien against it held by defendant Karbe. It is evident from a consideration of the facts in the case that these notes, by the indorsement which was made on them in conformity to the order of the circuit court in the first suit referred to, lost their character as negotiable commercial paper. While the defendant Karbe is the owner of them, he holds them, not as the holder of commercial paper, and as such entitled to the protection of the law merchant or our own law, but he is the holder and owner by purchase of a lien upon these lands, evidenced as to amount by these notes secured by the deed of trust. As such, he is entitled to satisfaction of that claim out of the property, to be released by a sale of it, and his title to the lien, he having purchased it for value, is not dependent on the result of the appeal in the first case. But he took these notes and acquired the lien under such circumstances as entitle the plaintiffs here to any surplus that may be realized on the sale of the premises over and above the amount of the lien against it, provided the appeal which the plaintiffs took to the Supreme Court is determined in their favor and the cause reversed and ultimately decided in their favor. This present suit is in equity, and the parties in interest in this controversy are all before the court, some of them parties to the first suit. It is not only within the power, but the bounden duty, of the court to administer equity in the premises.

The defendant Karbe is not a party and was not a party to the suit or proceeding in the suit of the Fishing & Hunting Club against the Kesslers and is not bound by that decree, although he may have had knowledge of it. But the land is, in a measure, in court, and his co-defendant, the Fishing & Hunting Club, is a party to that suit and a party to this suit. In that suit the Club was adjudged to be the equitable owners of the property. The judgment in that suit appealed from and a supersedeas bond being given in it, does not cut off the right that the Kesslers may have to an equity in the land and to any surplus it may yield on sale under foreclosure, in the event that the judgment is reversed. [Rodney v. Gibbs, 184 Mo. 1, 82 S. W. 187.] While as said, no reversal would destroy Karbe's interest as holder of the lien, a reversal and subsequent proceedings might constitute these plaintiffs the equitable owners of the premises. Therefore to save the equities of all the parties, the decree should direct a foreclosure of the interests of the plaintiffs and as also that of the Club and that any proceeds of the sale under a foreclosure, in excess of the amount of the costs of the foreclosure and the lien against the property, should be held pending the determination of that appeal, to be afterwards disposed of as the rights of the parties, that is to say, the Kesslers and the Fishing & Hunting Club, might then appear: provided that appeal is not determined before foreclosure is had and completed.

It will also be necessary, as before said, for the circuit court to find and determine the amount of the debt against the land to the date of the judgment of foreclosure and then order a foreclosure of the property, closing out the equity of redemption both of the Kesslers and of the Prairie Slough Fishing & Hunting Club in the property and directing that in the event of any surplus being realized at the sale over and above the debt, costs and expenses of the foreclosure,

this surplus be deposited by the sheriff or other officer or person ordered to make the sale with the clerk, or in the registry of the court, there to remain pending the determination of the appeal of the case in which the Prairie Slough Fishing & Hunting Club is plaintiff and William P. and Lena Kessler are defendants. If it should happen that the appeal referred to is determined before final disposition of this cause, the circuit court is left free to make such orders herein as may be then proper.

The judgment of the circuit court is reversed and the cause remanded with directions to that court to proceed in accordance with this opinion. *Nortoni* and *Caulfield, JJ.,* concur.